7-1-7-9-2 Lyler Carlson v. University of New England Ms. Sheridan, good morning. Good morning. I would like to reserve two minutes of my time for the meeting. Madam? Two minutes. Two minutes. Yes. May it please the court, Judge Torway, Judge Lynch, Judge Barron, I'm Alexis Sheridan. I'm here on behalf of the plaintiff appellate, Dr. Laura Carlson, in this employment retaliation case. Simply put, I think this case is a lot less complicated than the three that came before you today. I hope so. I think we all do, Your Honor. Summary judgment was granted for the defendant in this case, and there were multiple material disputes of fact that made summary judgment inappropriate. And Dr. Carlson is entitled to go to a trial to have a jury decide those facts in her claims of employment retaliation under Title VII and the Maine Human Rights Act. Given the time today, I'd like to touch on two main points that I think are global problems with the district court's decision. The other areas are also discussed in our briefing, and again, the decision should be reversed in its entirety. The first point I'd like to touch on is that there was a material dispute of fact that should have gone to the jury over whether what happened to Dr. Carlson following her complaints of harassment would dissuade a reasonable worker in her shoes from filing complaints of harassment and retaliation. Second, there was also a dispute of fact over whether Dr. Carlson had made a prima facie showing of causation, or the evidence that Dr. Carlson introduced made a prima facie showing of causation that should have gone to the jury. In other words, she showed for purposes of summary judgment that what happened to her would not have happened if she hadn't made her complaints of retaliation. With respect to the first point, the question whether what happened to Dr. Carlson would dissuade a reasonable worker in her circumstances, and specifically whether any reasonable jury could find that based on the facts, Dr. Carlson presented the following facts. She is a university professor, a specialist in a specific field, exercise, sports, performance. She performs research in that field, and she joined University of New England, UNE, to teach in that field. In 2012, she complained of sex harassment by her direct supervisor, Dr. Vizich. UNE told her that what had happened to her was sex harassment. He testified the same way in this case. But Dr. Vizich testified that he was never reprimanded for his conduct, and that he was never told that he needed to stop. Dr. Carlson was told the relationship wasn't going to go away. She was going to need to make it work, participate in one-on-one meetings with him, and keep lines of communication open. Years following that, there was continued harassment. An ongoing campaign of retaliation began by Dr. Vizich that was demeaning her ability to do her job and compromising her job responsibilities. She complained again two years later. My direct supervisor is continuing to retaliate against me and has harassed me during the past two years as well. And at that point, she was given a choice. She could leave the department that she loved and continue teaching her courses, but escape the conduct of her retaliatory supervisor, or she could stay and tolerate it. She didn't want to leave, but she chose the latter. After she left, she recognized she'd gotten the worst possible hybrid. She lost her courses, she lost her advisees, and her ability to practice. So one of the arguments you make is that there is a material dispute of fact that should go to a jury as to what was said in conversation with the dean of the college about whether she would get to continue to teach her courses post-transfer. Maybe there are some other details there. The defendants, as I understand it, basically say, well, that could have been a viable theory, but you waived it by not raising this argument in those terms to the district court. What do you say to that? That's a good question, Your Honor, and I'm glad you asked it. Defendants don't describe exactly what the argument would be. I mean, I think that's a factual contention that we made, and it was very, very clearly made. We very clearly stated in our briefing down below, and the statement of material fact, and Dr. Carlson stated it very clearly at her deposition, that she understood that she was going to continue teaching her courses based on the representations of Dean Francis Conley. And in particular, there's an e-mail that Dr. Carlson sent following her conversation with Dean Francis Conley, which said, if the move can be accomplished along the lines that we discussed, it would satisfy my concerns right now. And Dr. Carlson was asked about that in her deposition, and she explained that the lines that they discussed were that she would be able to continue teaching her courses and otherwise do her job but escape the retaliatory conduct of Dr. McGinnis. So the key thing you say is that there's evidence in the record of her saying that she was told she could keep the classes? That's right. Where is that in the record? That is in her deposition. It is also in her statement of material facts and her declaration. Both say that as well. So to give you some specific citations, Carlson's deposition at page 148, appendix, page 480, her declaration, 457, her statement of material facts. What was what? Her statement of material facts at page 457 of the appendix. And those will all cross-reference you to her deposition testimony. And it will also reference this particular exhibit to her deposition testimony, which is an email, which interestingly the defendants quoted in their brief one sentence of that email, which is taken out of context. And the sentence that is missing is, if this can be accomplished along the lines that we discussed. So it's very important to recognize that there is never in this record an inconsistency among Dr. Carlson. I thought that the school, the dean's testimony in his deposition, he testifies that what he had said was that you can start off, but things may change with respect to the classes. I think she did testify that way, or at least consistently with that, if not explicitly. And you're saying your client consistently contested whether that had been represented to her. That's absolutely true. I think there's no question that there's a question. It's a very clear dispute in the lower court. The lower court briefing says there's a hotly disputed issue of fact of what she understood about the transfer and what... Not what she understood. What was the basis for her understanding. That's right. What was told to her. That's right. That is also very clearly described in the lower court. I'm sorry, I don't understand the argument. The idea would be that retaliation was a knowing, misleading option? Well, there's two problems. So there's first, the district court separated out the transfer itself from its subsequent adverse consequences. I know, but on this theory, this particular theory. Sure, on the transfer itself, the... I'm out of time, but could you ask your question? I'll tell you where it's coming from. One might think that a person who complains about being harassed to the school and the school says we're not going to do anything about it has a claim of sex harassment against the school but not retaliation. One might also think that a person who complains to a school that I'm being harassed and the school gives a knowingly false option to address it is retaliating by doing that. So that second theory seems like a potentially viable one for you. And it depends on it having been articulated and then having some evidentiary support in the record. And you suggested that there is evidentiary support in the record for that here. I guess the further thing I'm asking is, was that articulated as a claim not just that there was a misunderstanding but that she was intentionally lied to by the dean because that would ground the retaliation claim? Yes, I think that the district court injected this notion that there was some sort of voluntary concession based on her... in response to the university's arguments, of course. But the way that Dr. Carlson always framed this is, I didn't want to be transferred. I feel that I was forced to transfer. That's still not my question. I understand. She's claiming she was forced because her situation was intolerable as a status quo. I get that. Separate retaliation argument. Maybe you went on the first. Maybe you don't from my perspective. But there is a separate argument which seems stronger, which is she complained about her current situation and in response the dean knowingly lied to her to get her to move into a situation that turned out to be worse. If that happened, that would seem like a relatively straightforward retaliation claim. Was that claim articulated by your client? And where on the record was that articulated? I think that my client's... well, her complaint and her briefing in opposition to summary judgment read together made clear that she was led to believe. And I think they also made clear that she was misleadingly led to believe that she was going to continue teaching her courses. That's for a jury to determine what the dean's intent was as to why he misled her. I think just one, I recognize I'm out of time, but one very important point to make is that the transfer taken, and you don't have to decide that with respect to the transfer taken in isolation. The real reason why all of this matters is because the district court decided that the subsequent adverse actions, the bad things that happened to her afterwards, were not caused by the complaint simply because this created an intervening cause because she had knowingly accepted it. So in that circumstance, it is very important what Dr. Carlson understood and less important what the university represented. So in other words, even without evidence about what the university represented, and there is evidence that it misled her, you can still find and you should still find in her favor because there are those subsequent very bad actions, very adverse consequences that happened to her, which she by no means understood, and there's no question in the record about that. Thank you. Thank you. Judge Barron, good morning. Good morning. May it please the court, I'm Peter Herzog on behalf of Appellee University of New England. Dr. Carlson badly wants this case to be about sexual harassment, but it's not. Excuse me, let's deal with Judge Barron's second theory. You've got a limited amount of time here, and I'd like to get you to focus on that. Yes, Your Honor. And then the theory that counsel just added, which is that the consequences of the transfer could be found by a jury to be the sort of adverse actions that qualify as retaliation. Well, to that point, Your Honor, and I'd like to address... Both points, please. The point that Judge Barron asked about frequently during Ms. Chardone's oral argument was about the possible misleading of Dean Frances Connolly with respect to the appellant's ability to continue teaching her courses, so I have three responses to that. The first is, appellant asks this court to draw all inferences in her favor because this is at summary judgment stage. That does not mean creating facts that are not in the record. The sole evidence of this purported statement that was made by Dean Frances Connolly is appellant's own deposition testimony where she replies to the agreement between Dean Frances Connolly and herself to transfer out of the Exercise and Sports Performance Department. Are you saying her affidavit is not competent evidence? Because that's plainly wrong. It's not in her affidavit, Your Honor. It's in her deposition testimony. Okay, fine. And she cited to that, and we don't dispute that that's there. What point are you making? My point is, the only evidence of this purported statement is appellant's own statement in an email saying, I agree with this change if it's along the lines that we discussed. So are you saying there's no evidence of her describing what was discussed? That's correct. There's no evidence of any intent on Dean Frances Connolly's part. There's no evidence of any statement actually made by Dean Frances Connolly. Why couldn't a jury do the following? You haven't answered this. Why couldn't a jury do the following? She says, I'll do it if it's along the lines we discussed. Okay? He comes back and says later in his testimony, what we discussed was that you may not be able to keep your class. Why couldn't a jury say, well, when she agreed saying along the lines we discussed, it's reasonable to infer she thought she'd be able to keep the class given how important that would be to her. Maybe she loses, maybe she wins, but that's for the jury. And as to what was in the mind of the dean when he said that, was he being deceitful or was he being helpful? Why couldn't they say he was being deceitful given that she kept coming to them with complaints and no one was doing anything about it? Why wouldn't both of those things be reasonable inferences for a jury to draw? Because, Your Honor, at this stage, we have to go off of what's in the record. And the only thing that's in the record... Everything I just said is in the record. It's based on things in the record, and based on those things in the record, we're just asking what could a jury reasonably infer? Why would it be unreasonable for a jury to have made the inferences based on the statements in the record that we agree are the only ones there to infer just what I suggested? I don't think that a jury could infer that, Your Honor, because immediately after the transfer, Dr. Carlson had her classes for the following academic year. If Dean Frances Connolly truly meant to mislead Dr. Carlson with this statement that we really don't know about, it doesn't make any logical sense why she would assign her to teach those very courses for the following academic year. Notably, Your Honor, immediately following her award of tenure, which happened when all of this is going on, immediately following her promotion to associate professor, while all this is going on, Your Honor. So I don't think a jury could infer that, because there is no evidence whatsoever, circumstantial or otherwise, suggesting there was a misleading statement. So you're relying on the fact that she kept her courses for a year, but thereafter she lost those courses, didn't she? She was assigned different courses following that academic year, Your Honor, and then the year following that, she was reassigned one of those courses. One of those courses. Correct, Your Honor. And she says other things happened to her as well. I still don't understand why the inferences that Judge Barron just drew for you are inferences that a jury could not find. Well, I think, Your Honor, that would be an extreme stretch beyond what is required at summary judgment. You have to show retaliation within one year. What's that, Your Honor? You're arguing for a rule that if there is retaliation, you have to show that it exists within one year. Yeah. I don't believe that's what I'm arguing, Your Honor. I think what I'm arguing is there has to be some evidence in the record. Yeah, well, you just argued that she kept her courses for a year, so it's irrational to conclude that the entire pattern of conduct doesn't amount to retaliation. Well, Your Honor, I'd like to address that point specifically, actually in going back to the evidence in the record. What this boils down to and what Judge Levy's opinion really focused on was Dr. Carlson's voluntary decision to leave the exercise and sports performance department. And I want to point out the undisputed facts on that issue. Well, the first request was, I'd like to be supervised by somebody else. Correct, Your Honor. And, in fact, after the transfer, she is supervised by somebody else, even though she's told before the transfer, I'm sorry, that's not an option. Here are your options. Transfer or remain under the supervision of the guy that you have consistently said sexually harassed you. Well, Your Honor, I think that's a good point that you raised. By determining, for the court to determine that Dr. Visich sexually harassed her or subjected her to a hostile work environment claim, that has to be decided under sexual harassment or hostile work environment analysis, which was not raised by the appellant. The standard to show retaliation is so much less than the standard to show harassment or discrimination. I don't see why a reasonable jury couldn't look at all of this and conclude that there was retaliation. It did affect her job. It did affect her future job prospects. Your Honor, what actually happened in what is 100% undisputed in the record, in plaintiff's deposition testimony as well, she doesn't dispute that she went to Dean Francis Connolly and said, I don't want to work under Dr. Visich anymore. I want to stay in the department. What happened following that was a discussion between the two individuals, the dean and Dr. Carlson. Dr. Carlson gave Dean Francis Connolly one choice. I don't want to work under him, but I want to stay in my department. What followed in the months following was Dean Francis Connolly giving her numerous choices, trying to work with her. There is nothing in this record suggesting that Dean Francis Connolly did anything negative to Dr. Carlson. Unless she lied to her in giving her the option to leave the department, because you agree that if he did that, that would be retaliation. I do not agree that that would be retaliation. So he could give her, the dean could give, is the dean a woman? Elizabeth Francis Connolly, yes. Okay, so the dean could give a knowingly false option to get her to leave the department, knowing that if she took it, it would be worse for her and that would not be a retaliatory act? I do not think so, Your Honor. I mean, one, there is no evidence of that. There is no evidence of that. Two, my position is that is a separate claim that was not raised here. And moreover, this entire line of argument was not raised once at the lower court. You know, her claim has been retaliation. You are saying, oh, well, maybe she would have had an arguable claim, but she brought it under the wrong branch of employment law. I do not think so, Your Honor. I think under the facts that we have in the record, which is all we can go off of, I don't think she has any claim whatsoever. Okay, just the last time to pin down this. If she properly raised the issue that she was knowingly lying to to get her out of the department and knowingly lying to her out of the department, knowing that what she was going to get into would be worse, would that be a cognizable claim of retaliation? No, Your Honor, it would not. Do you have any authority for that? Not me? That the claim raised... If she properly raised that she was somehow misled by Dean Francis Connolly and that led her to accept this option, one of many options that was offered to her, I don't have direct case law on point other than the Burlington Ordinance Standard and the fact that we are simply obligated to look at this through the lens of retaliation, which is would some act dissuade a reasonable worker? And I want to repeat the point. Despite Dr. Carlson's self-serving statements, not even in the record, simply in the brief, there is no evidence of any misleading conduct on the part of Dean Francis Connolly and Dr. Carlson kept her courses for the year following. The only thing that happened was she was assigned different courses for a single academic year and she was granted tenure and promoted to associate professor and granted the highest pay raise of her career all while this is going on. Thank you. Thank you. Ms. Trenholm. Briefly, if some good things did happen to Dr. Carlson following the transfer, that might create an issue of fact that the jury would take into consideration when deciding whether all those bad things were adverse. The bottom line here is that the district court correctly recognized that adverse things did happen to her, losing her classes, losing her advisees, and losing her web presence. The court was right about that. The court was wrong to deny her a remedy for those bad things because she had reluctantly consented to leave as the choice of the lesser between two evils and there is no question that that is what the record shows. Under those facts, under the Burlington Northern test, which takes under all facts and circumstances, under the cases in this circuit, there is no question that the law does not deny her a remedy on that basis and so therefore it's important to recognize that although there is evidence that Dean Francis calmly misled her or led her to believe that she would keep her classes, you don't need to rely on that in order to reverse that here because what is important there is what Dr. Carlson understood based on Dean Francis Conley's representations. And I will add that these bad acts, these adverse actions, which the court correctly recognized were adverse, happened within this one-year time frame. They weren't even attenuated in time for her transfer. So I think the briefs, there's a lot of facts in this case. There are a lot of facts in all of these cases and our briefs discuss them and cite them to the record extensively and they demonstrate a real genuine dispute here. And for that reason, the decision should be reversed in its entirety and Dr. Carlson should be able to present her case to the jury. Thank you. Thank you.